## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JULIA CHRISTINE FETTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-23-762-STE** |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ___). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Plaintiff initially filed for Social Security benefits in July 2021. Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-26). The Appeals Council denied Plaintiff's request for

review. (*Id.* at 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since March 25, 2020, the alleged onset date. (TR. 19). At step two, the ALJ determined Mrs. Fetter suffered from the following severe impairments: inflammatory arthritis and paroxysmal atrial fibrillation (afibrillation). (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.* at 21).

At step four, the ALJ concluded Mrs. Fetter retained the residual functional capacity (RFC) "to perform light work as defined in 20 CFR [§] 404.2567(b) except with no commercial driving." (*Id.*) The ALJ presented the RFC limitations to a vocational expert (VE) to determine whether Plaintiff could perform her past relevant work. (*Id.* at 24, 50-51). Given the limitations, the VE stated that Mrs. Fetter could perform her past relevant work as a naturopathic doctor and acupuncturist. (*Id.* at 50-51).[1] At step five, the VE identified five additional jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (*Id.* at 24-25, 50-51). The ALJ then adopted the VE's testimony and concluded,

---

[1] In his decision, the ALJ indicated the VE testified that Mrs. Fetter could not perform any of her past relevant work. (*Id.* at 24). However, during the administrative hearing, the VE testified that she could perform the two previous jobs identified above. (*Id.* at 50-51).

at step five, that Mrs. Fetter was not disabled based on her ability to perform the identified jobs. (*Id.* at 25).

## III.   ISSUES PRESENTED

Mrs. Fetter raises the following issues: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ erred in his consideration of Plaintiff's subjective reports; and (3) the ALJ failed to properly evaluate Dr. Sarah Coats' opinion.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotations and emphasis omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quotations omitted).

3

## V.   THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff contends the ALJ erred in his RFC determination, including failing to consider limitations resulting from her non-severe impairments. (ECF No. 17 at 14-18). At step two of the sequential process, the ALJ found Plaintiff suffered from the following non-severe impairments:

> Raynaud's Syndrome; Hashimoto's thyroiditis; hypothyroidism; Celiac's disease; Connective tissue disorder/Lupus; Coronary Artery Disease; syncope; IgM Immunodeficiency; hypogammaglobulinemia anemia; chronic pain, myocarditis; acute pericarditis; erythematosus related syndrome; IBS (irritable bowel syndrome)/inflammatory bowel disease/irritable bowel syndrome; PUD (peptic ulcer disease); small intestinal bacterial overgrowth; ulcerative colitis due to C. Difficile; chronic pancolitis; iron deficiency anemia; chronic fatigue syndrome; status post acute Myocardial Infarction; cholecystectomy; lateral epicondylitis of left elbow; rotator cuff syndrome; hip bursitis; and hearing loss.

(TR 19-20). He further found these impairments do not cause "more than a minimal limitation" in Plaintiff's ability to perform basic work activities. (*Id.* at 20). Plaintiff argues the ALJ failed to adequately consider her non-severe impairments in determining the RFC and erred by not including a need for "a greater than typical number of work breaks and/or absences." (ECF No. 17 at 14-16, 18).

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit discussed the regulatory directives that require an independent step-four assessment of impairments found medically determinable but non-severe at step two. In doing so, the Court stated, "[A] conclusion that the claimant's [] impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068–69. Rather, "[i]n his RFC

4

assessment, the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069. Likewise, Social Security Ruling 96–8p states that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96–8p, 1996 WL 374184, at *7. In doing so, the ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *Spicer v. Barnhart*, 64 F. App'x 173, 177–78 (10th Cir. 2003).

Plaintiff begins with challenging the ALJ's consideration of chronic fatigue. (ECF No. 17 at 16). In his decision, the ALJ explained that Plaintiff had "recently reported symptoms of fatigue and been diagnosed with chronic fatigue, but this has not lasted twelve months and there is not any indication that it will." (TR. 22). Plaintiff contends this is an insufficient analysis because the record indicates she reported symptoms of fatigue prior to her diagnosis.

The record shows Plaintiff did report symptoms of fatigue well before the official diagnosis of chronic fatigue syndrome (CFS). (TR. 565, 587, 618, 629, 640, 668, 716, 769, 820, 864, 870, 904, 986, 1060, 1160, 1263, 1382, 1389, 1397). However, as the Commissioner notes, the diagnosing physician specifically stated that Plaintiff's CFS was "[l]ikely part of the undifferentiated connective tissue disease." (TR. 1276). Additionally, Plaintiff's fatigue was often treated as part of her connective tissue disorder. (TR. 1249, 1263, 1271). In his decision, the ALJ discussed Plaintiff's connective tissue disease and any resulting limitations. (*Id.* at 23). Additionally, neither examining nor reviewing physicians indicated Plaintiff's connective tissue disease and/or reports of fatigue

warranted limitations not contained within the RFC. *See, cf., Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) ("[T]he relevant analysis is whether the claimant was actually *disabled* [during the relevant time period] . . . . A retrospective diagnosis without evidence of actual disability is insufficient."); *Anchondo v. Barnhart*, No. 02-1271 WDS, 2004 WL 7337800, at *4 (D.N.M. June 23, 2004) ("[E]ven if Dr. Ramage is considered to have given Plaintiff a retrospective diagnosis of fibromyalgia, the record as a whole still supports the ALJ's finding that Plaintiff had the RFC to do light work with a few restrictions.").

Next, Plaintiff asserts the ALJ erred in his consideration of her chronic diarrhea by relying on an "isolated report" of improvement in September 2022. (ECF No. 17 at 16). The flaws in Plaintiff's argument are two-fold. First, Plaintiff's reports of improvement with this condition were not limited to September 2022. Indeed, Plaintiff reported varying degrees of improvement in April-June 2020, August 2020, February 2021, March 2021, October 2021, and August 2022. (TR. 433, 564, 716, 725, 746, 762, 773, 1364).

Second, in his decision, the ALJ stated that Plaintiff had reported chronic diarrhea but after various treatments, it was resolved in September 2022. (TR. 22). Following September 2022, the record contains only one additional record, dated January 2023, in which this condition is addressed. Plaintiff relies on this record, stating that she reported chronic diarrhea as a chief complaint in January 2023. (ECF No. 17 at 16; ECF No. 7 at 4). However, Plaintiff's report on that date was merely that she experienced two to three bowel movements per day. (TR. 874). Plaintiff's previous reports of chronic diarrhea

involved three to six or ten to fifteen stools per day. (TR. 752, 755, 760, 1326, 1350). Thus, the ALJ's conclusion regarding this condition is supported by substantial evidence.

Plaintiff next challenges the ALJ's failure to discuss Plaintiff being underweight as a separate impairment. (ECF No. 17 at 16-17). She argues the ALJ's failure to do so is further amplified by the fact that she "almost" satisfied the requirements for Listing 5.08, i.e., underweight due to a digestive disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08.

At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments[.]" *Fischer-Ross*, 431 F.3d at 733. To satisfy this burden, a claimant must establish that her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007).

Here, as noted, Plaintiff does not contend she met Listing 5.08's requirements. Thus, any failure to consider the same does not warrant a reversal of the ALJ's decision.

To the extent Plaintiff contends the ALJ should have simply considered this condition as a separate impairment, this issue is without merit. Plaintiff never raised being underweight as an impairment in either her disability application and supporting documents or during the administrative hearing. (ECF No. 24 at 7). Relying on *Sims v. Apfel*, 530 U.S. 103 (2000), Plaintiff argues the ALJ's duty to consider an impairment does

not depend upon her raising the same. (ECF. No. 27 at 5). However, Plaintiff's reliance on this decision is misguided.

In *Sims*, a plurality held that Social Security claimants "need not [] exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.* at 112. The Court specifically noted, however, that it was not deciding "[w]hether a claimant must exhaust issues before the ALJ." *Id.* at 107. Further, later circuit decisions have ruled a claimant waived an issue by not presenting it to the ALJ.

> [W]e have no intention of extending [the *Sims*] rule, if it is one (only four members of the Court endorsed it), to the failure of an applicant to raise an issue at the ALJ level. The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process.

*Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (citation omitted); *see also Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (applying waiver without expressly distinguishing *Sims*); *see also, cf., Carr v. Saul*, 593 U.S. 83, 92 n.5, 95-96 (2021) (holding that claimants need not exhaust Appointments Clause challenges to the validity of ALJ decisions before seeking judicial review, but stating, "Outside the context of Appointments Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently.").

Additionally, "[i]t is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); *see Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) (stating that the claimant bears the burden at steps one through four of the sequential evaluation to establish a disability). Further, an ALJ is generally entitled to rely on the claimant to allege

impairments, and to rely on the claimant's counsel to structure and present the case in a way that ensures her claims are adequately explored. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). Not only did Plaintiff initially fail to include being underweight due to her digestive disorder(s) among her list of alleged impairments, but neither she nor her counsel raised the issue before the ALJ. Under these circumstances, the fact that the ALJ did not address Plaintiff being underweight as an impairment is neither surprising nor erroneous. *See id.* at 1062 ("ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." (quotations omitted)). The limited holding in *Sims* does not run contrary to these long-standing principles.

Finally, Plaintiff relies on several medical records reflecting abnormal findings or test results to argue the ALJ was overly selective in his discussion of the evidence. (ECF No. 17 at 12-13). Plaintiff fails to explain how her own selective discussion of the evidence supports further limitations than those the ALJ included in the RFC. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's discussion of the evidence included both relatively normal and abnormal findings from medical providers *via* observation, examination, and testing. (TR. 22-24). The Court rejects Plaintiff's relatively general argument that the record supported greater limitations as nothing more than an attempt to re-weigh the evidence in her favor, which the Court cannot do. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform.").

## VI.   THE ALJ'S CONSIDERATION OF PLAINTIFF'S SUBJECTIVE REPORTS IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff next contends the ALJ erred in his consideration of her subjective reports of pain and limitations. This Court's review of the ALJ's consideration of subjective reports is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citation and additional alteration omitted). Generally, the ALJ considers the objective medical evidence, daily activities, medical treatments and their side effects, if any, and any alternative treatment. 20 C.F.R. § 404.1529(c).

In his decision, the ALJ noted Plaintiff's testimony that her daily conditions vary and that "[s]he believes she would need frequent absences, breaks, and naps." (TR. 22). He concluded, however, based on the record, that her reported symptoms and effects were not entirely consistent with the medical and other evidence of record "for the reasons explained in the decision." (*Id.*) The ALJ proceeded to discuss the objective medical evidence, Plaintiff's daily activities, and treatments. (TR. 22-24).

As previously discussed, the ALJ reviewed the medical record and found that Plaintiff's chronic diarrhea was resolved by September 2022. (TR. 22, 874). He also thoroughly reviewed Plaintiff's history of cardiac impairments. (TR. 22-23). The ALJ noted Plaintiff's diagnoses of coronary artery disease and paroxysmal afibrillation. (TR. 22).

Following the start of medication, in January 2022, Plaintiff experienced intermittent episodes of chest pain every four to six weeks and continued to exercise without chest pain/pressure or shortness of breath. (TR. 22, 903). In February 2021, testing showed no evidence of pericardial effusion and afibrillation. (TR. 22, 946, 964).

The ALJ explained that later in 2021, Plaintiff's afibrillation worsened and while sporadic, was debilitating when it occurred. (TR. 22, 986). In September 2021, she had unstable angina and physicians performed a heart catheter that showed only 10% LAD stenosis, or blockage, and that Plaintiff's left ventricular systolic function was 60%, or normal. (TR. 23, 1083, 1111). She was briefly hospitalized in August 2022 for afibrillation, but it resolved overnight. (TR. 1059). The following month, she reported that she had experienced two major afibrillations during the previous two years, but they had resolved on their own. (TR. 23, 1059). She also reported that palpitations and shortness of breath increased with exertion. (TR. 23, 1061). In discussing non-severe impairments, the ALJ noted Plaintiff's lupus and recurrent idiopathic pericarditis had improved with medication, as recorded in March 2022. (TR. 23, 1252).

The ALJ also discussed Plaintiff's daily activities, explaining,

> Functionally, she has reported to be able to take care of her pets, prepare simple meals, does light household chores, and some laundry with help. She goes outside daily but does not drive due to Afibrilation. She shops by mail and computer. She cannot handle money but can handle change and can spend time with others. However, she sometimes needs help dressing, bathing, and using the toilet; she needs reminders to take her meds; she does not drive; and she cannot handle stress.

(TR. 23). Plaintiff complains the ALJ failed to consider more nuanced aspects of her reported activities. Specifically, that Plaintiff needs assistance with nearly all her reported

activities. However, Plaintiff only reported that she needed help with household chores, laundry, and personal care (TR. 43, 205-06), which the ALJ specifically considered. Further, she did indicate in her Function Report that her shopping is limited to mail and computer (TR. 207), and the ALJ noted this as well.  Based on the record, the ALJ limited Plaintiff to light work with no commercial driving.

Plaintiff does not persuasively explain why this RFC is inadequate to accommodate her impairments and resulting limitations. Instead, she lists records regarding various impairments and concludes that no-one "suffering from the extent and nature of [her] physical impairments alone" could sustain competitive employment. (ECF No. 17 at 22).

Plaintiff has not pointed the Court to evidence the ALJ failed to consider but instead, simply disagrees with the ALJ's conclusions. Further, her disagreement is centered on arguments that would impermissibly require this Court to reweigh the evidence. *See Fannin v. Comm'r, SSA*, 857 F. App'x 445, 448 (10th Cir. 2021) (noting that reweighing the evidence "exceeds the scope of substantial-evidence review"); *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments,] Mr. Alarid is asking us to reweigh the evidence, which we cannot do.).

Additionally, Plaintiff's assertion that the ALJ failed to connect his conclusions to evidence in the record also fails. Following the ALJ's statement that Plaintiff's subjective reports were inconsistent with the record, the ALJ thoroughly discussed the evidence of record. The Tenth Circuit is clear that so long as the ALJ's decision includes a summary of the relevant objective medical evidence, he is not required to recite the same evidence

again in a different section of the opinion. *See, cf., Best–Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) ("Although there was not a contemporaneous discussion of [the medical evidence] in discounting [the physician's] opinion, in reading the ALJ's decision as a whole, it is evident [the physician's] opinion is inconsistent with the record.").

## VII. THE ALJ PROPERLY EVALUATED DR. COATS' OPINION

The ALJ found Dr. Coats' opinion partially persuasive, rejecting only the portion in which she concluded Plaintiff had adaptation skills limitations. (TR. 24). Plaintiff contends he erred by failing to adequately address the opinion's supportability and consistency. (ECF No. 17 at 26). The Court disagrees.

The ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In this regard, the ALJ must articulate how persuasive he finds the medical opinion. 20 C.F.R. § 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 416.920c(b)(2) & (c)(1)-(2).

> "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion or prior administrative medical findings to the evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." § 416.920c(c)(2). An ALJ must explain how he or she "considered the supportability and consistency factors." § 416.920c(b)(2).

13

> An ALJ must consider factors three through five (relationship with the claimant, specialization, and other factors) but is not required to explicitly discuss them unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. See § 416.920c(b)(2), (3).

*Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022). Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." (quotations omitted)).

In finding Dr. Coats opinion partially persuasive, the ALJ explained:

> [Dr. Coats] concluded that Claimant's cognition and intellect were intact as were her social skills, but that she had adaptation skill limitations. This is supported by her exam findings but is somewhat inconsistent with her activities of daily life and limited, conservative mental health treatment that does not indicate she has adaptation skill limitations.

(TR. 24). Thus, The ALJ specifically addressed the supportability and consistency of Dr. Coats' opinion. He stated that her conclusions were supported by her own examination findings. (*Id.*) But also found that adaptation skills limitations were inconsistent with the record, and specifically, Plaintiff's daily activities and her conservative mental health treatment. (*Id.*)

Plaintiff also complains that the ALJ failed to tie his conclusions to the relevant evidence. (ECF No. 17 at 26). However, the ALJ had previously discussed Plaintiff's daily activities and her limited mental health treatment in the decision. (TR. 22, 23). Although a contemporaneous discussion can be helpful, as noted herein, when the ALJ has already

discussed the medical evidence and testimony, the lack of a contemporaneous discussion does not mean this Court is unable to review the ALJ's decision. *See Endriss v. Astrue,* 506 F. App'x 772, 777 (10th Cir.2012) (ALJ "is not required to continue to recite the same evidence again" if already discussed earlier)*; Best–Willie*, 514 F. App'x at 733.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 30, 2024.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE